# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF FLORIDA

------------------------------------------------------------X

MARGARET COTTER and JUSTIN DUARTE,
individually and on behalf of others similarly
situated,   No.

                Plaintiffs,

v.

BLOOMIN' BRANDS, INC. & BONEFISH
GRILL, LLC,

                Defendants.

_____/

## COLLECTIVE ACTION COMPLAINT

Plaintiffs Margaret Cotter and Justin Duarte, individually and on behalf of all others similarly situated, by their attorneys, Shavitz Law Group, P.A., upon personal knowledge as to themselves, and upon information and belief as to other matters, alleges as follows:

## NATURE OF THE ACTION

1. This lawsuit seeks to recover overtime compensation for Plaintiffs and similarly situated co-workers, salaried Restaurant Managers, however variously titled, including Front-of-House Managers, Back-of-House Managers, and Kitchen Managers (collectively, "RMs"), who work or have worked for Defendants Bloomin' Brands, Inc. and Bonefish Grill, LLC (collectively, "Bonefish" or "Defendants") at Bonefish's restaurants nationwide.

2. Bloomin' Brands, Inc. is "one of the world's largest casual dining restaurant companies in the world with a portfolio of leading, differentiated restaurant concepts . . . [including] the founder-inspired . . . Bonefish Grill . . . ." (2016 10-k at Part I, Item 1). According to its Form 10-K, Bonefish is an "upscale casual seafood restaurant concept that specializes in market fresh

fish from around the world, wood-grilled specialties and hand-crafted cocktails." *Id*.

3. For the fiscal year ending on December 25, 2016, Defendants operated 204 company-owned Bonefish restaurants in the United States, along with six domestic franchises. *Id*. For the fiscal year 2016, Defendants earned more than $4.2 billion dollars in revenue. *Id*.

4. Bonefish restaurants are organized between "Front-of-House," which focuses on customer service, and "Back-of-House," which focuses on food preparation. Employees may work between both "Front-of-House" and "Back-of-House," depending on the needs of the restaurant.

5. At Bonefish, RMs are required to perform, as their primary duties, the same non-exempt duties that hourly employees perform.

6. RMs spend the majority of their shifts performing such tasks as greeting and waiting on customers, expediting and serving food, cooking and preparing food, as well as clearing and setting tables, and cleaning the restaurant.

7. RMs do not get paid any overtime wages for the hours they work over 40 per workweek.

8. Bonefish classifies all RMs as exempt from the overtime pay provisions of the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq*. ("FLSA").

9. RMs should be classified as non-exempt from the overtime provisions of the FLSA.

10. Upon information and belief, Bonefish applied the same compensation and employment policies, practices, and procedures to all RMs nationwide.

11. Plaintiffs brings this action on behalf of themselves and similarly situated current and former RMs nationwide who elect to opt-in to this action pursuant to the FLSA and,

specifically, the collective action provision of 29 U.S.C. § 216(b), to remedy Defendants' violations of the wage-and-hour provisions of the FLSA that have deprived Plaintiffs and other similarly situated employees of their lawfully earned wages.

## THE PARTIES

### Plaintiff Margaret Cotter

12. Margaret Cotter ("Cotter") is an adult individual who is a resident of Moorpark, California.

13. From in or around December 2013 to June 2014, Cotter was employed by Defendants as an RM at Defendants' location in Northridge, California. Cotter previously worked as an RM-in-training in Westminster, Colorado and an RM in Westminster, Colorado, Las Vegas, Nevada, and Southlake, Texas.

14. As an RM, Cotter primarily performed the functions of an hourly employee.

15. Cotter frequently worked more than 60 hours per workweek.

16. Pursuant to Bonefish policy and pattern or practice, Bonefish did not pay Cotter premium overtime pay when she worked more than 40 hours in a workweek as an RM.

17. Cotter is a covered employee within the meaning of the FLSA.

### Plaintiff Justin Duarte

18. Justin Duarte ("Duarte") is an adult individual who is a resident of Jarretsville, Maryland.

19. From in or around January 2010 to February 2015, Duarte was employed by Defendants as an RM at Defendants' locations in Bel Air, Crofton, Annapolis, and Towson, Maryland and in Baton Rogue, Louisiana.

20. As an RM, Duarte primarily performed the functions of an hourly employee.

21. Duarte frequently worked more than 60 hours per workweek.

22. Pursuant to Bonefish policy and pattern or practice, Bonefish did not pay Duarte premium overtime pay when he worked more than 40 hours in a workweek as an RM.

23. Duarte is a covered employee within the meaning of the FLSA.

**Defendant Bloomin' Brands, Inc.**

24. Bloomin' Brands, Inc. ("Bloomin' Brands") is the parent corporation of Bonefish Grill, LLC and has owned and/or operated Bonefish restaurants during the relevant time period.

25. Bloomin' Brands is a business corporation organized and existing under the laws of the state of Delaware and has its principal executive office located at 2202 N. Westshore Boulevard, Suite 500, Tampa, Florida 33607. Bloomin' Brands shares this office with Defendant Bonefish Grill, LLC.

26. Bloomin' Brands is a covered employer within the meaning of the FLSA, and, at all times relevant, employed Plaintiffs and similarly situated employees.

27. At all times relevant, Bloomin' Brands maintained control, oversight, and direction over Plaintiffs and similarly situated employees, including timekeeping, payroll, and other employment practices that applied to them.

28. Bloomin' Brands applies the same employment policies, practices, and procedures to all RMs at Bonefish restaurants, including policies, practices, and procedures with respect to the classification of RMs as exempt, and non-payment of overtime compensation.

29. Upon information and belief, at all times relevant, Bloomin' Brands' annual gross volume of sales made or business done was not less than $500,000.00.

**Defendant Bonefish Grill, LLC**

30. Bonefish Grill, LLC is a Florida limited liability company.

31. Bonefish Grill, LLC shares its principal executive office with Defendant Bloomin' Brands, Inc. which is located at 2202 N. Westshore Boulevard, Suite 500, Tampa, Florida 33607.

32. Bonefish Grill, LLC is a covered employer within the meaning of the FLSA, and, at all times relevant, employed Plaintiffs and similarly situated employees.

33. At all times relevant, Bonefish Grill, LLC maintained control, oversight, and direction over Plaintiffs and similarly situated employees, including timekeeping, payroll, and other employment practices that applied to them.

34. Bonefish Grill, LLC applies the same employment policies, practices, and procedures to all RMs at Bonefish restaurants, including policies, practices, and procedures with respect to the classification of RMs as exempt, and non-payment of overtime compensation.

35. Upon information and belief, at all times relevant, Bonefish Grill, LLC annual gross volume of sales made or business done was not less than $500,000.00.

36. Each Defendant employed or acted in the interest of an employer towards Plaintiffs and other similarly situated current and former RMs and, directly or indirectly, jointly or severally, including, without limitation, directly or indirectly controlling and directing the terms of employment and compensation of Plaintiffs and other similarly situated current and former RMs. Upon information and belief, the Defendants operate in concert and together in a common enterprise and through related activities, as here relevant, so that the actions of one may be imputed to the other and/or so that they operate as joint employers within the meaning of the FLSA.

37. Each Defendant had the power to control the terms and conditions of employment of Plaintiffs and other similarly situated current and former RMs including, without limitation,

those terms and conditions relating to the claims alleged herein.

38. Defendants jointly employed Plaintiffs and other similarly situated current and former RMs.

## JURISDICTION AND VENUE

39. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1337.

40. This Court also has jurisdiction over Plaintiffs' claims under the FLSA pursuant to 29 U.S.C. § 216(b).

41. Venue is proper in the Middle District of Florida pursuant to 28 U.S.C. § 1391 because Defendants reside in this district and a substantial part of the events or omissions giving rise to the claims occurred in this district.

## COLLECTIVE ACTION ALLEGATIONS

42. Plaintiffs brings the First Cause of Action, an FLSA claim, on behalf of themselves and all similarly situated persons who have worked as exempt-classified RMs at Bonefish restaurants nationwide at any time from April 13, 2014 to the date of judgment in this action, who elect to opt-in to this action (the "FLSA Collective").

43. Defendants are liable under the FLSA for, *inter alia,* failing to properly compensate Plaintiffs and other similarly situated RMs.

44. Consistent with Defendants' policy and pattern or practice, Plaintiffs and the members of the FLSA Collective were not paid premium overtime compensation when they worked over 40 hours in a workweek.

45. All of the work that Plaintiffs and the members of the FLSA Collective have performed has been assigned by Defendants, and/or Defendants have been aware of all of the work that Plaintiffs and the FLSA Collective have performed.

46. As part of their regular business practice, Defendants have intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Plaintiffs and the members of FLSA Collective. This policy and pattern or practice includes, but is not limited to:

    (a) willfully failing to pay their employees, including Plaintiffs and the members of the FLSA Collective, premium overtime wages for hours that they worked in excess of 40 hours per workweek;

    (b) willfully misclassifying Plaintiffs and the members of the FLSA Collective as exempt from the protections of the FLSA; and

    (c) willfully failing to record all of the time that their employees, including Plaintiffs and the members of the FLSA Collective, have worked for the benefit of Defendants.

47. Defendants are aware or should have been aware that federal law required them to pay Plaintiffs and the members of the FLSA Collective overtime premiums for hours worked in excess of 40 per workweek.

48. Plaintiffs and the members of the FLSA Collective perform or performed the same primary duties.

49. Defendants' unlawful conduct has been widespread, repeated, and consistent.

50. There are many similarly situated current and former RMs who have been underpaid in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

51. This notice should be sent to the FLSA Collective pursuant to 29 U.S.C. § 216(b).

52. Those similarly situated employees are known to Defendants, are readily identifiable, and can be located through Defendants' records.

## COMMON FACTUAL ALLEGATIONS

53. Throughout their employment with Defendants, Plaintiffs and the members of the FLSA Collective consistently worked more than 40 hours per workweek.

54. Defendants were aware that Plaintiffs and the FLSA Collective worked more than 40 hours per workweek, yet Defendants failed to pay overtime compensation for hours worked over 40 in a workweek.

55. Defendants did not keep accurate records of hours worked by Plaintiffs and the FLSA Collective.

56. Defendants did not require Plaintiffs and the FLSA Collective to clock in or out, or otherwise record their time.

57. Plaintiffs and the FLSA Collective's primary duties were routine, non-exempt tasks including, but not limited to:

   a. greeting and waiting on customers;
   b. expediting food and serving customers;
   c. preparing and cooking food;
   d. clearing and setting tables; and
   e. cleaning the restaurant.

58. Plaintiffs and the FLSA Collective spent the majority of their time serving customers in the dining area; preparing food in the kitchen area; and performing the same or similar tasks to hourly non-exempt employees.

59. Plaintiffs and the FLSA Collective's duties did not differ substantially from the duties of hourly non-exempt employees.

60. As RMs, Plaintiffs and the FLSA Collective's primary job duties did not include:

   a. Hiring;
   b. Firing;
   c. Making recommendations as to hiring, firing, or other employment decisions;

  d. Scheduling; or
  e. Disciplining other employees.

61. Plaintiffs and the FLSA Collective's primary duty was not directly related to Defendants' management or general business operations.

62. Plaintiffs and the FLSA Collective's primary duty did not include the exercise of discretion or independent judgment regarding matters of significance.

63. In that regard, Plaintiffs:

  a. were not involved in planning Defendants' long or short term business objectives;
  b. could not formulate, affect, implement or interpret Defendants' management policies or operating practices;
  c. did not carry out major assignments that affected Defendants' business operations;
  d. did not have authority to commit Defendants in matters that have significant financial impact; and
  e. could not waive or deviate from Defendants' established policies or procedures without prior approval.

64. Plaintiffs and the FLSA Collective's primary duties were manual in nature.

65. The performance of manual labor duties occupied the majority of Plaintiffs and the FLSA Collective's working hours.

## FIRST CAUSE OF ACTION
### Fair Labor Standards Act – Overtime Wages
**(Brought on behalf of Plaintiffs and the Members of the FLSA Collective)**

66. Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

67. Defendants have engaged in a widespread pattern and practice of violating the FLSA, as described in this Collective Action Complaint.

68. At all relevant times, Plaintiffs and the FLSA Collective were engaged in commerce and/or the production of goods for commerce within the meaning of 29 U.S.C. §§ 206(a) and 207(a).

69. At all relevant times, Defendants employed Plaintiffs and the FLSA Collective.

70. The overtime wage provisions set forth in §§ 201 *et seq.* of the FLSA apply to Defendants.

71. At all relevant times, Defendants have been employers engaged in commerce and/or the production of goods for commerce within the meaning of 29 U.S.C. §§ 206(a) and 207(a).

72. At all times relevant, Plaintiffs and the FLSA Collective were employees within the meaning of 29 U.S.C. §§ 203(e) and 207(a).

73. Defendants have failed to pay Plaintiffs and the FLSA Collective the overtime wages to which they are entitled under the FLSA.

74. Defendants' violations of the FLSA, as described in this Collective Action Complaint, have been willful and intentional.

75. Defendants have not made a good faith effort to comply with the FLSA with respect to their compensation of Plaintiffs and the FLSA Collective.

76. Because Defendants' violations of the FLSA have been willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. § 255.

77. As a result of Defendants' willful violations of the FLSA, Plaintiffs and the FLSA Collective have suffered damages by being denied overtime wages in accordance with 29 U.S.C. §§ 201 *et seq*.

78. As a result of the unlawful acts of Defendants, Plaintiffs and the FLSA Collective have been deprived of overtime compensation and other wages in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, attorneys' fees, costs and other compensation pursuant to 29 U.S.C. § 216(b).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, individually and on behalf of all other similarly situated persons, respectfully requests that this Court grant the following relief:

A. That, at the earliest possible time, Plaintiffs be allowed to give notice of this collective action, or that the Court issue such notice, to all RMs and similarly situated employees who are presently, or have at any time from April 13, 2014, up through and including the date of this Court's issuance of court-supervised notice, worked at Bonefish. Such notice shall inform them that this civil action has been filed, of the nature of the action, and of their right to join this lawsuit if they believe they were denied proper wages;

B. An award of damages (including but not limited to unpaid wages and unpaid overtime wages, as applicable), liquidated damages, the employer's share of FICA, FUTA, state unemployment insurance and any other required employment taxes to be paid by Defendants according to proof;

C. Pre-judgment interest and post-judgment interest as provided by law;

D. Appropriate equitable and injunctive relief to remedy violations, including but not necessarily limited to an order enjoining Defendants from continuing their unlawful practices;

E. A reasonable incentive award for the Plaintiffs to compensate them for the time and effort they have spent protecting the interests of other RMs, and the risks they have undertaken.

F. Attorneys' fees and costs of the action; and

G. Such other injunctive, equitable, and other relief as this Court shall deem just and proper.

**JURY DEMAND**

Plaintiffs demand a trial by jury on all issues so triable.

Dated: Boca Raton, Florida
April 13, 2017

Respectfully submitted,

_____
Gregg I. Shavitz
Florida Bar No. 11398
**SHAVITZ LAW GROUP, P.A.**
1515 S. Federal Hwy
Boca Raton, Florida 33432
Telephone: (561) 447-8888
gshavitz@shavitzlaw.com

Michael Palitz* (*pro hac vice* motion forthcoming)
830 3rd Avenue, 5th Floor
New York, New York 10022
Telephone: (800) 616-4000
mpalitz@shavitzlaw.com

*Attorneys for Plaintiffs and the Putative Collective*

DocuSign Envelope ID: CF04C5D0-6643-4D3D-90D3-57EA4981F0E3

# CONSENT TO JOIN FORM

1. I consent to be a party plaintiff in a lawsuit against Defendant(s), **Bonefish Grill**, and/or related entities and individuals in order to seek redress for violations of the Fair Labor Standards Act, pursuant to 29 U.S.C. § 216(b).

2. I hereby designate the Shavitz Law Group, P.A. to represent me in bringing such claim, and to make decisions on my behalf concerning the litigation and settlement. I agree to be bound by any adjudication of this action by the Court, whether it is favorable or unfavorable.

3. I also consent to join any other related action against Defendant(s) or other potentially responsible parties to assert my claim and for this Consent Form to be filed in any such action.

DocuSigned by:

_Justin Duarte_

Signature

Justin Duarte

Print Name